UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHARON L. SLONIGER,

                                                        Plaintiff,


                                                                                    **Hon. Hugh B. Scott**

                                    v.
                                                                                    09CV858S

                                                                                    **Order**
                                                                                    **and**
SIGMUND DEJA,                                                                       **Amended Scheduling**
ROAD BEAR RV,                                                                       **Order**
ROAD BEAR INTERNATIONAL,

                                                        Defendants.


        Before the Court is plaintiff's motion to compel defendant's deposition under specified

conditions (Case No. 09CV858, hereinafter the " '858 Case" or "this case," Docket No. 26).

This is identical to motions in another case bearing this name (<u>Sloniger v. Deja</u>, Case

No. 09CV984S[1], hereinafter the " '984 Case," Docket Nos. 21, 23[2]). Both cases had identical

briefing schedules for these motions, with responses due October 26, 2010, and any replies by

November 2, 2010, and all motions being deemed submitted, initially without oral argument, on

November 2, 2010 ('858 Case, Docket No. 27; '984 Case, Docket No. 22). Upon review of the

papers in this case and in the '984 Case, the Court scheduled oral argument for November 16,

2010 ('858 Case, Docket No. 31; '984 Case, Docket No. 27). Following that argument, the

_____

        [1]A third action, <u>Reed as Administratrix of Estate of Edward Sloniger v. Deja</u>, Case
No. 10CV379S, also was filed. Plaintiff in that case has not moved to compel defendant Deja's
deposition.

        [2]Docket No. 21was filed without proof of service, so plaintiff refiled the motion as
Docket No. 23 with certificate of service.

Court reserved decision after defendant Deja reported on whether he traveled to the United States following the accident at issue in these cases, ultimately until the Court received Deja's affidavit regarding his travels to this country.

Both motions seek an Order compelling the deposition of defendant Sigmund Deja (also spelled "Siegmund" in both parties' papers) in this District, to have Deja appear at a deposition in Germany with plaintiff's travel expenses to be borne by Deja's insurer or to have Deja's Answer stricken. Plaintiff cited the New York CPLR as the basis for her motion, but similar relief is available under Federal Rule of Civil Procedure 37.

This Order will consider the motions in both cases.

## BACKGROUND

This is a removed diversity action arising from an automobile accident in Niagara County, New York. According to the removal notice ('858 Case, Docket No. 1), plaintiff is a New York resident, defendant Deja is a German citizen, and defendants Road Bear RV and Road Bear International are California corporations (id. ¶¶ 9-12), and the alleged damages exceed $75,000 (id. ¶ 14). On May 27, 2009, defendant Deja operated a leased recreational vehicle (Deja rented the recreational vehicle from defendants Road Bear RV and/or Road Bear International) that allegedly ran a stop sign hitting a sports utility vehicle operated by Edward Sloniger. Mr. Sloniger apparently died on impact. Plaintiff Sharon Sloniger, sitting in the passenger seat, was seriously injured in the accident. Deja's wife, Leokadia, also was killed in the accident and Deja's son, Sebastian, was also injured. (Id. ¶ 19; see generally id., Ex. A2, state Complaint).

Each defendant separately removed the state court action to federal court ('858 Case by Deja; '984 Case by Road Bear RV), hence the two case numbers under the Sloniger v. Deja name. Later, the estate of Edward Sloniger sued Deja and others for his wrongful death and injuries arising from this accident, which also was removed to this Court from state court, Reed as Admin. of Sloniger v. Deja, et al., Case No. 10CV379.

After motion practice regarding service of Deja ('858 Case Docket Nos. 2, 12; see also id., Docket No. 1), a Scheduling Order was entered in each case ('858 Case, Docket No. 15; '984 Case, Docket No. 14). Under both cases, plaintiff's expert disclosure was due by January 6, 2011, defense expert disclosure by February 7, 2011, motions to compel discovery by February 8, 2011, and discovery completed by March 8, 2011 ('858 Case, Docket No. 15; '984 Case, Docket No. 14; see '984 Case, Docket No. 25, Pl. Atty. Aff. ¶ 15).

*Plaintiff's Motion to Compel*

Plaintiff seeks to depose Deja either here or in Germany at his insurer's expense. Pretrial conferences were held on June 21 and July 14, 2010, to discuss the issues involved in deposing Deja ('858 Case, Docket Nos. 24, 25). In this motion, plaintiff alleges that Deja "has engaged in a pattern and practice of delay with respect to the scheduling and completion of party depositions herein" ('858 Case, Docket No. 26, Pl. Atty. Aff. ¶ 2). Deja's private counsel stated that Deja was only available for deposition in Germany, while Deja's insurer refused to pay reasonable travel expenses plaintiff will incur in conducting that deposition there (id. ¶ 5). Plaintiff contends that Deja has not presented any reasonable explanation for the failure to date to schedule this deposition (id. ¶ 6). Nevertheless, plaintiff proceeded to notice Deja's deposition for August 26, 2010, in Buffalo, New York, but that deposition did not take place (id. ¶ 15,

Ex. E). Plaintiff's counsel stated in oral argument that the deposition did not take place because of the dispute as to which party would bear the expense of a trans-Atlantic examination. Plaintiff takes the position that Deja has to present himself in this District for this deposition, or, failing that, his insurer should pay the reasonable travel expenses to Germany to conduct that deposition there (id. ¶ 7).

After citing New York State cases (id. ¶¶ 8-9), plaintiff argues that under federal practice a non-resident defendant's deposition has been held in the venue of the federal action (id. ¶ 10, citing Dwyer v. Deutsche Lufthansa AG, No. CV 04-3184, 2007 U.S. Dist. LEXIS 9806 (E.D.N.Y. Feb. 13, 2007) (Tomlinson, Mag. J.) (holding that plaintiff either travel to New Hampshire to depose defendant's president or pay his cost to come to New York to be deposed, id. at *2), especially when defendant claims that he could not afford to travel but had traveled to the United States prior to plaintiff's deposition notice (id. ¶ 11, citing United Bank for Africa PLC v. Coker, No. 94-CIV 0655, 2003 U.S. Dist. LEXIS 1008 (E.D.N.Y. Jan. 24, 2003) (denying Nigerian defendant's request to conduct deposition in Nigeria where he was represented by New York counsel and all prior litigation in that case occurred in New York). She also argues that federal courts have ordered defendants to be deposed live rather than appear for a telephonic examination (id. ¶ 12, citing Gagasoules v. MBF Leasing LLC, No. 08-CV-2409, 2009 U.S. Dist. LEXIS 119001 (E.D.N.Y. Dec. 22, 2009) (remanding case to Magistrate Judge to determine why plaintiffs' deposition could not occur by video conference)).

Plaintiff in this case argues that her choice of forum was constrained, hence limiting her to this venue (id. ¶ 13).

Deja responds that he has a medical excuse that precludes his travel to the United States; he suffers from post-traumatic stress disorder and depression with mourning sorrow ('858 Case, Docket No. 28, Def. Atty. Decl. ¶ 2; see id. Ex. A (letter, in German and translated, from Deja's doctor)). He argues that travel to this country would present significant stress and Deja's eight-year-old son, Sebastian, needs Deja to remain at home (id.). Deja also argues that plaintiff recognized this undue hardship in her motion papers to preclude Deja's examination in the United States (id. ¶ 3; cf. '858 Case, Docket No. 26, Pl. Atty. Aff. ¶ 6).

Deja next contends that usually a non-resident defendant is deposed where he resides and the parties are responsible to bear their own respective costs for conducting their discovery under the American rule ('858 Case, Docket No. 28, Def. Atty. Decl. ¶ 4; '858 Case, Docket No. 29, Def. Memo. at 2-3, 3-5). Under the American rule, each party bears its own litigation costs, including its discovery expenses, see, e.g., Dodge-Regupol, Inc. v. Rb Rubber Prods., No. 3:06-CV-236, 2010 U.S. Dist. LEXIS 31838, at *12 (M.D. Pa. Mar. 31, 2010), in the absence of claims that the opponent acted in bad faith or filed an oppressive lawsuit, see F.D. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 129 (1974). Deja concludes that if plaintiff wants to depose him she should do so at her own expense ('858 Case, Docket No. 29, Def. Memo. at 3-4). Deja found New York State precedent against imposing the travel expenses for a foreign party's deposition upon the inquiring party (id. at 4, citing Longo v. Armor Elev. Co., 278 A.D.2d 127, 129, 720 N.Y.S.2d 443, 444 (1st Dep't 2000)).

Alternatively, Deja suggests, if plaintiff cannot afford to depose him in Germany, that he be examined by video deposition, acknowledging the Court's discretion to direct where a deposition may be taken (id. at 5-6).

In a reply filed in the '984 Case ('984 Case, Docket No. 25), plaintiff's attorney argues that Deja's purported PTSD is a "calculated gambit seeking to delay discovery of this matter until" plaintiff (a cancer survivor now in remission) "possibly expires," and, comparing the parties' conditions, argues that Deja's claimed ailment "pales in significance" to plaintiff's (id., Pl. Atty. Aff. ¶¶ 5-6).  Plaintiff argues that there is no support for Deja's "so-called" doctor rendering his conclusory diagnosis of PTSD absent proof to support that conclusion (id. ¶ 7), noting that this condition does not preclude Deja's testimony in Germany or by video conferencing (id. ¶ 9).  If Deja is to pursue this argument, plaintiff requests his medical, psychiatric, and psychological records and the right to retain an expert to oppose Deja's request not to travel to be deposed (id. ¶ 10).  Plaintiff next points to Deja's patent application in this country and, upon information and belief, plaintiff believes that Deja traveled to the United States to pursue this application; if he able to appear for that application, then he should be able to come here to be deposed in this case (id. ¶ 14).  Plaintiff's attorney filed a further affidavit regarding the patent application ('984 Case, Docket No. 26, Ex. A; see also id., Docket No. 30, Ex. A).  The patent has two applicants (see id.) and plaintiff only alleges upon information and belief that Deja must have traveled to this country to apply.

As for the site for the deposition, plaintiff argues that the general rule that non-resident parties are deposed in their residence has exceptions, noting in particular that corporate defendants are frequently deposed outside of the principal place of business ('984 Case, Docket No. 25, Pl. Atty. Aff.¶¶ 16, 17).

Finally, plaintiff seeks an extension of the discovery schedule (id. ¶ 15).  Plaintiff also seeks an Order that Deja be compelled to travel to Buffalo, New York, within 90 days to be

deposed in these cases or that the deposition occur in Germany at Deja's insurer's expense. Alternatively, if the Court orders a video deposition, plaintiff seeks an opportunity to review Deja's medical and psychological records prior to that deposition. She also seeks production of Deja's passport use information from the United States government. (Id. at ninth to tenth unnumbered pages, Wherefore clauses.)

Deja, in his reply, opposes references to this patent application ('984 Case, Docket No. 31, Def. Atty. Decl. ¶¶ 3, 4), arguing that there was no proof that Deja traveled here to pursue this application or to contact New York City patent attorneys about it (id. ¶ 5).

During oral argument, one issue arose as to whether Deja in fact traveled to this country after the accident. His counsel was to provide a status report by November 30, 2010, on that question. Deja's counsel then reported that Deja did not travel to the United States since the accident ('858 Case, Docket No. 35, Reeb letter). Plaintiff's counsel, by letters, complained that Deja's counsel should not be allowed to report this information so informally, urging this Court not to consider the letter or the statements therein until an affidavit or affirmation is filed ('858 Case, Docket Nos. 36, 37, McGillicuddy letters). The Court then ordered Deja to submit an affidavit on this question by December 20, 2010 ('858 Case, Docket No. 38), which he did on December 2, 2010 ('858 Case, Docket No. 39, filed Dec. 6, 2010), stating that he had not returned to the United States since May 27, 2009 (id. ¶ 3). Plaintiff then objected to this affidavit as filed since (a) it contains an electronic signature, cf. W.D.N.Y. Administrative Procedures for Electronic Case Filing sec. 2.g.(i) (rev. Dec. 1, 2007)[3], (b) it did not contain a notarization, and

_____

[3]Electronic signature for filed document signed by non-attorney indicated by "s/(name)" with a party "who disputes the authenticity of an electronically filed document or the authenticity of the signature on that document" filing an objection to the document within ten days of

(c) it had no certification of the translation, cf. 28 U.S.C. § 1827 ('858 Case, Docket No. 41,

McGillicuddy letter, Dec. 8, 2010). She insists upon filing of the original affidavit (id.). Deja's

counsel then wrote describing the nature of Deja's German affidavit, enclosing a copy of his

signed affidavit ('858 Case, Docket No. 42, Russ letter, Dec. 9, 2010[4]). For a complete record,

all five letters cited herein were filed at the insistence of the Court.

## DISCUSSION

I.      Standards–Deposition of Non-Resident Parties

"As a general rule, 'the party noticing the deposition usually has the right to choose the

location,'" Buzzeo v. Board of Educ., Hempstead, 178 F.R.D. 390, 392 (E.D.N.Y. 1998) (Boyle,

Mag. J.) (quoting 7 Moore's Federal Practice–Civil § 30.20[1][b][ii]); Robert Smalls Inc. v.

Hamilton, No. 09 Civ. 7171, 2010 U.S. Dist. LEXIS 59023, at *2 (S.D.N.Y. June 10, 2010)

(Cott, Mag. J.) (citing cases); see also Fed. R. Civ. P. 30(b)(1) (notice for deposition stating time

and place of the deposition). "The deposition of a non-resident defendant, however, is generally

conducted at the defendant's place of residence," Buzzeo, supra, 178 F.R.D. at 392 (see '858

Case, Docket No. 29, Def. Memo. at 2); see Bank of New York v. Meridien Biao Bank Tanzania

Ltd., 171 F.R.D. 135, 155 (S.D.N.Y. 1997). Underlying this rule is the concept that the plaintiff

initially chose the forum while the defendant is "not before the court by choice," Farquhar v.

Shelden, 116 F.R.D. 70, 72 (E.D. Mich. 1987); Buzzeo, supra, 178 F.R.D. at 392. The district

---

receiving Notice of Electronic Filing. See also Administrative Procedures sec. 2.g.(v.), "originals
of all documents containing signatures must be retained by the filing party and made available,
upon request, to the Court and other parties."

[4]The filed letter did not include the copy of the enclosed signed affidavit sent to
Chambers.

court in Buzzeo also noted that "'the plaintiff is generally required to "bear any reasonable burdens of inconvenience that the action presents,"'" 178 F.R.D. at 392 (quoting Gulf Union Ins. Co. Saudi Arabia v. M/V Lacerta, No. 91 Civ. 2814, 1992 U.S. Dist. 2759, at *12 (S.D.N.Y. Mar. 9, 1992), quoting, in turn, Federal Deposit Ins. Co. v. La Antillana, S.A., No. 88 Civ. 2670, 1990 U.S. Dist. LEXIS 13246, at *4 (S.D.N.Y. Oct. 5, 1990) (plaintiff noticed defendants, from Argentina, for deposition in New York with no peculiar or compelling reason why deposition should not take place in defendants' residence)). If a plaintiff notices a defendant's deposition in a place other than defendant's place of residence and defendant objects, "the plaintiff has the affirmative burden of demonstrating 'peculiar' circumstances which compel the Court to suspend the general rule and to order that depositions be held in the other location," La Antillana, supra, 1990 U.S. Dist. LEXIS 13246, at *3.

Courts "'retain substantial discretion to designate the site of a deposition,'" Buzzeo, supra, 178 F.R.D. at 392 (quoting Mill-Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547, 550-51 (S.D.N.Y. 1989)) (see also '858 Case, Docket No. 29, Def. Memo. at 5). The court in Gulf Union Insurance, for example, upheld conducting defendants' depositions in Malta, the place of defendant's residence, rather than New York, the venue for the action, 1992 U.S. Dist. 2759, at *13-15. Plaintiff here recognizes that courts have allowed non-domicile defendants to be deposed in their domiciles where the defendants have shown proof of financial hardship ('858 Case, Docket No. 26, Pl. Atty. Aff. ¶ 12, citing Normande v. Grippo, No. 01Civ. 7441, 2002WL59427, at *2 (S.D.N.Y. Jan. 16, 2002), but distinguished the party's deposition from that of other witnesses, then concluded about the feasibility of telephonic recording of depositions (id.).

A motion for a protective order not to have a deposition at a particular site, or to compel deposition in a particular location, is considered by reviewing three factors of the cost, convenience, and litigation efficiency of the designated location, Buzzeo, supra, 178 F.R.D. at 393; see also Mill-Run Tours, supra, 124 F.R.D. at 550-51.

II.    Discovery of Deja's Mental Condition and Passport Records; Deja's Patent Application

   A.    Further Discovery to Conduct Discovery

      1.    Deja's Medical and Psychological Condition

Three preliminary issues need to be considered before reaching the substance of plaintiff's motion to compel.  First, plaintiff argues that Deja has placed his physical, psychological, and psychiatric condition at issue by invoking his PTSD as a reason for not traveling here, therefore, plaintiff seeks discovery as to that condition.  Note, Deja has not asserted counterclaims against plaintiff in the '858 Case or crossclaims against the Road Bear defendants in either case to otherwise put his medical condition in play (see '858 Case, Docket No. 13; cf. '984 Case, Docket No. 17, Deja Ans. to Am. Compl.).

As for Deja's medical and psychological records, he is not claiming that he cannot be deposed at all; rather, he declines to travel for (among other reasons) his health.  Rule 26(b) provides that the scope of discovery, "unless otherwise limited by court order," is to "any nonprivileged matter that is relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1). The medical discovery plaintiff seeks here is relevant only for the question of the ability of Deja to travel to this country for a deposition and is not related to any claim or defense asserted in this action.  Plaintiff is in effect seeking further discovery to conduct discovery–disclosure of Deja's records unrelated to the substance of the case but reaching the question of his ability to travel to

this country. Extensive production and review of Deja's medical record is unnecessary here merely to establish whether he should be deposed in this country or in Germany and plaintiff's request for such discovery is **denied**.

2.     Deja's Travel Records and Confirming His U.S. Travel

Second, plaintiff seeks federal government travel records to confirm whether Deja entered and left this country subsequent to the accident. During argument of the motion to compel, the Court sought a status report from Deja's counsel on the question whether he traveled to this country following the accident, without specifying the manner in which this report was to be made (see '858 Case, Docket No. 34).

Deja's counsel's initially reported that Deja has not traveled here since the accident ('858 Case, Docket No. 35, Reeb letter). Plaintiff raises an additional issue whether this Court should consider Deja's travel based solely upon defense counsel's letter representations ('858 Case, Docket No. 36). This Court then ordered Deja himself to file an affidavit as to his travels to this country ('858 Case, Docket No. 38). In that affidavit, Deja then confirmed that he had not returned to this country ('858 Case, Docket No. 39). Plaintiff objected to defects in that affidavit, noting that it was not notarized, that the translation of the affidavit was not certified, and that the filed version contained only an electronic signature ('858 Case, Docket No. 41). While insisting upon formalities, plaintiff has consistently raised her objections by her counsel's correspondence. In a similar informal vein, defense counsel responded ('858 Case, Docket No. 42) that the electronically filed affidavit comported with federal and this Court's rules. Counsel noted that notarizing as done in this country is not available in Germany, that an equivalent notarization would require Deja to retain German counsel at about $500. Deja's

counsel concludes that his client's affidavit was acknowledged under penalties of perjury (id.), under German criminal law (see '858 Case, Docket No. 39, ¶ 2).  The attachment to the letter contained a photocopy of the signed affidavit.

As for the electronic signature in the filed affidavit, under this Court's electronic filing procedures that format was appropriate, W.D.N.Y. Administrative Procedures for Electronic Case Filing sec. 2.g.(i)(1).  The procedure calls for an "s/name" signature to prevent actual signatures from being placed on the Internet.  If disputed, as here, the original "pen and ink" document should be retained by Deja's counsel for inspection, see id. sec. 2.g.(v).

While Deja's affidavit was not notarized as is customary in this country, he noted that he was aware of the penalties in filing a false affidavit under German law and made his statement about his travel (or lack thereof) to the United States.  Given that the issue underlying this motion is the cost of a trans-Atlantic examination, it is **not necessary** for Deja to incur additional costs to swear his statement before a notary or equivalent official in Germany.

The point raised by inquiring into Deja's travels to this country only leads to his ability to travel and belie any contention he raises as to his inability.  Whether or not Deja returned to the United States has limited relevance.  Further inquiry to confirm Deja's whereabouts, such as contesting the veracity of his statements or by checking passport records maintained by the federal government, will further delay this action and involve production from various record keeping agencies of the United States.  It is unnecessary to compel that extensive production.  Plaintiff's request for these records is also **denied** as well as her request to compel an American-style affidavit from Deja.

B.      Deja's Patent Application

Third, another ground plaintiff uses to justify bringing Deja back to this country is his pending United States patent application.  This ground implies that if Deja can come to this country to apply for a patent (or to retain counsel to make this application), then he can appear at a deposition here.  Plaintiff, however, has not shown that Deja actually traveled here to apply for that patent or to retain New York City counsel to advance his application.  As indicated in the papers, this is a joint application where the co-applicant, and first named on the application (see '984 Case, Docket No. 26, Pl. Aff. Ex. A), could have traveled here to process it (if indeed either applicant traveled here at all).  This application could just have been made by an exchange of correspondence between the applicants and their counsel without Deja ever setting foot in this country.  The record is incomplete on this score but, like Deja's medical records and his passport file and travel records, there is no need for ancillary discovery on this point and no exploration of the history of this application and Deja's travel related to it is necessary here.  Plaintiff's request on this score also **is denied**.

With these preliminary matters considered, next is the site of Deja's examination.

III.    Site of Deja's Deposition

Both plaintiff and the Road Bear RV defendants seek to have defendant Deja's deposition compelled; that relief is **granted**.  First, the grounds Deja states in opposition to his deposition are addressed to the location of the examination; he does not oppose being deposed at all.  Second, even if Deja's grounds were to oppose his deposition generally, they are not sufficient to preclude his examination.

The crucial issues are where this examination is to occur and under what conditions (including which party is to bear the costs for this examination).

The court in Buzzeo granted a protective order against plaintiff deposing defendants in plaintiff's attorney's office a mere 40 miles away from defendants' school district offices, 178 F.R.D. at 391, 393, finding that costs, convenience, and litigation efficiency favored conducting defendants' examinations at the district's offices, id. at 393.

Here, this case requires a trans-Atlantic deposition of a defendant. Considering the three factors noted in Buzzeo, Mill-Run, and other cases, wherever this deposition is held if conducted as a traditional face-to-face deposition, there will be extensive costs for getting Deja, plaintiff, their attorneys, and the court reporter all in the same room at the same time, with it being more costly for the multiple parties to travel rather than one. The factor of costs appears to favor plaintiff.

As for convenience, the burden of travel would have to be borne by one party or another, whether it is compelling one person (Deja) to travel to the United States or at a minimum[5] three people (plaintiff, her attorney, and Deja's counsel[6] of record in this action) to travel to Germany. Deja's expressed medical condition and family situation establish that it would not be convenient to have him appear in the United States for this examination; even if his medical condition needed further proof and is discounted, no one is contesting his parental obligations and the

---

[5]Given that Deja is a German national and his ability to speak English may be questioned, an interpreter may also have to be included. Also a court reporter will have to be arranged, either someone qualified in Germany or flying in a qualified reporter from the United States.

[6]Deja also has counsel from his insurance company, which has not formally appeared in this action, but may be involved in such a deposition.

hardship his travel may have on his surviving son. Plaintiff (as well as codefendants) have not stated an objection on convenience grounds. Thus, the factor of convenience favors Deja.

As for litigation efficiency, such records that Deja may refer to or produce at a deposition are presumably with him in Germany, although there has been no discussion at this point of what records Deja would need for this deposition. In fact in this case, the relevant records Deja would be asked about probably are in the United States (such as records surrounding the rented recreational vehicle, the accident, and plaintiff's condition). None of the parties, however, have stated the number or nature of documents to be reviewed in this deposition or used this as a factor for holding the examination here rather than in Germany. As for discovery acrimony as to require frequent Court intervention, there is no indication that such judicial intervention would be necessary as to hold the deposition here rather than abroad (at a 6-hour forward time difference from this District). While this motion has been contentious (including a prolonged exchange of correspondence, noted above), there is no indication that the Court would have to interject or intervene during the course of Deja's questioning as to require it to be held in this District. It has been a practice of this Court to not entertain questions during depositions and allow the parties to complete the examination and note objections to be raised (if necessary) in a subsequent motion to compel or for a protective order. Thus, the factor of litigation efficiency does not favor either Deja or plaintiff.

This case is similar to <u>Gulf Union Insurance</u>, <u>supra</u>, 1992 U.S. Dist. LEXIS 2759, at *11-15, where the court upheld deposing a Maltese defendant in Malta at the plaintiff's expense. In that case, plaintiff was a Saudi insurer with only a minimal presence in New York. The deposition here was part of jurisdictional discovery to determine whether the court had personal

jurisdiction over one defendant, Bella Shipping, a Maltese corporation. Bella Shipping sought its deposition be held in Malta, its residence and principal place of business at plaintiff's cost pursuant to the Southern District of New York's local rules. Id. at *2, 11-12. Plaintiff, however, requested Bella Shipping's deposition occur in New York at defendant's expense, id. at 12. The court found that the preference for a deposition at defendant's place of residence (Malta) was strongest because defendant was challenging personal jurisdiction of the court, id. at *13-14. The court then found that plaintiff failed to demonstrate peculiar circumstances to justify the deposition in New York, id. at *14. The court applied the three factors of Mill-Run, see 124 F.R.D. at 550-51; see also Buzzeo, supra, 178 F.R.D. at 393, and found that plaintiff had not shown that defendant Bella Shipping was better able to bear the expenses or that the expenses would be lower in New York than in Malta, Gulf Union Ins., supra, 1992 U.S. Dist. LEXIS 2759, at *14. Given that both parties were foreign, a New York deposition was no more convenient there than elsewhere, id. And, as for litigation efficiency, since defendant's records were in Malta and absent acrimony in the conduct of discovery, the deposition in Malta made more sense, see id. at *14-15.

Plaintiff in the case at bar cites cases where corporate defendants were required to be deposed outside of their principal places of operation (see '984 Case, Docket No. 25, Pl. Atty. Aff. ¶¶ 16-17, citing Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 166 (S.D.N.Y. 1985)), see Sugarhill, supra, 105 F.R.D. at 171 ("Corporate defendants are frequently deposed in places other than the location of the principal place of business, especially in the forum, for the convenience of all parties and in the general interests of judicial economy."). She has not cited

cases involving <u>natural persons</u> as defendants being compelled to leave their domicile to be deposed such as she seeks here.

The general rule is the non-resident party need not be required to come to the forum (or any other place) for his or her deposition, <u>see</u> <u>Robert Smalls Inc.</u>, <u>supra</u>, 2010 U.S. Dist. LEXIS 59023, at *2 (denying motion to compel Florida defendants to be deposed in New York). In <u>Robert Smalls</u>, for example, the court weighed the three factors of cost, convenience, and litigation efficiency, concluded that the factors did not favor either side and held that plaintiff failed to overcome the presumption that defendants should be deposed in their place of residence, <u>id.</u> at *2-9. Another non-corporate party example is <u>O'Sullivan v. Rivera</u>, 229 F.R.D. 187, 189 (D.N.M. 2004), where the mere fact that an out of state defendant availed himself of personal jurisdiction in New Mexico was insufficient to justify his deposition there; rather, the court ordered his deposition in his native Colorado, <u>see also</u> <u>Perry v. Edwards</u>, 16 F.R.D. 131 (W.D. Mo. 1954) (Missouri plaintiff against Michigan defendant cannot compel defendant to appear in Kansas City for deposition even if defendant may be reimbursed by his insurer for expenses related to that examination).

Although involving a plaintiff, another court upheld the plaintiff's examination occurring by a videotape deposition from Germany where the plaintiff was barred entry into the United States due to hostilities at that time between Iran and Iraq and deeming her testimony essential in that case, <u>Farahmand v. Local Properties, Inc.</u>, 88 F.R.D. 80, 83 (N.D. Ga. 1980). New York civil procedure law cited by plaintiff (<u>cf.</u>, <u>e.g.</u>, '858 Case, Docket No. 26, Pl. Atty. Aff. ¶¶ 8-9) may be to the contrary but this case is now in federal court and governed by federal rules, <u>see</u> 28 U.S.C. §§ 1441(a), (c), 1447(a) (effect of removal).

As with <u>Robert Smalls</u>, the three factors do not decisively favor either side. Plaintiff here **has not overcome** the presumption under federal law that a non-resident defendant should be deposed in his place of residence and she **has not shown** any extraordinary circumstances that would require Deja's appearance in the United States for this deposition. Therefore, in exercise of this Court's discretion in determining the location of depositions, the deposition of Deja in these cases ('858 Case and '984 Case) shall be in **Germany**.

The next issue is which party will be responsible for the expenses associated with that examination.

IV.    Party Responsible for Costs of Deja's Deposition

Although New York State cases may support (in certain circumstances) passing the examining party's expenses of a non-resident defendant upon that party (<u>see</u> '858 Case, Docket No. 26, Pl. Atty. Aff. ¶ 9, citing <u>Rogovin v. Rogovin</u>, 3 A.D.3d 352, 353, 770 N.Y.S.2d 342, 342-43 (1st Dep't 2004) (defendant showing that she had hardship if required to travel from Kansas to New York for deposition, where she was sole caregiver for ailing nonagenarian grandparent and special needs child); <u>Gartner v. Unified Windows, Doors and Siding, Inc.</u>, 68 A.D.3d 815, 816, 890 N.Y.S.2d 608, 609 (2d Dep't 2009) (alternatives for deposition of Colombian plaintiffs in New York action)), plaintiff cites no <u>federal</u> law for such cost shifting. In <u>Rogovin</u>, the First Department found that defendant's circumstances (caregiver obligations in Kansas) justified an exception under New York procedures for not having the non-resident defendant's deposition take place in the county where the action was pending, 3 A.D.3d at 353, 770 N.Y.S.2d at 343; N.Y. CPLR 3110[1]. The New York rule is the opposite of the federal rule regarding the default deposition site for non-resident defendants. Furthermore, plaintiff fails to

establish that Deja's <u>insurer</u> (as opposed to Deja himself) would be responsible for the deposition expenses. Plaintiff has not produced Deja's insurance policy or stated its terms in which his insurer would cover that expense as a defense cost. While Deja's travel expenses related to defending this action might be a defense cost, without producing Deja's insurance policy[7] it is unknown whether the expenses of transporting the other parties to a deposition is covered.

The equitable result here is to have each party bear its own expenses toward conducting this examination, <u>see</u> <u>Dodge-Regupol</u>, <u>supra</u>, 2010 U.S. Dist. LEXIS 31838, at *12.

V.      Method for Deja's Deposition

Given that this deposition is to occur in Germany and the inherent travel and related expenses, an alternative method from live, in-person testimony for obtaining Deja's testimony is in order. A more cost-effective manner may be to conduct it by video deposition where each party remains in place while Deja is linked by video conference to the other parties as he is examined.

Plaintiff argues that a <u>telephonic</u> deposition would not work because Deja's condition and demeanor could not be conveyed over the telephone (<u>cf.</u> Docket No. 26, Pl. Atty. Aff. ¶ 12), but she does not argue in her papers against a <u>video</u> deposition, where Deja can be observed as he testifies. But during oral argument, plaintiff's counsel stated that a video deposition would be the least desirable method, but without specifying why. Plaintiff does not contend, for example, that there are voluminous exhibits that Deja needs to testify about that would make a video

---

[7]This is not an invitation for plaintiff to seek disclosure of that policy, <u>cf.</u> Fed. R. Civ. P. 26(a)(1)(A)(iv) (initial disclosure of insurance agreements under which insurer may be liable "to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment").

deposition unwieldy and potentially awkward due to handling such documents remotely. Also, as noted during oral argument, this deposition may require translation (cf. '858 Case, Docket No. 39, Deja Aff., in translation) and hence will be unwieldy at its outset. In summary, this deposition presents more challenges than the typical oral examination.

Plaintiff cites Gagasoules, supra, 2009 U.S. Dist. LEXIS 119001, for the proposition that federal courts will order defendants to appear at a live deposition rather than a telephonically recorded one ('858 Case, Docket No. 26, Pl. Atty. Aff. ¶ 12). In fact, the court remanded on the question now posed in the present case. In Gagasoules, plaintiffs were California residents compelled to sue defendant in New York because of a forum selection clause in the equipment lease at issue in that case. The plaintiffs sought a protective order against being deposed in New York, seeking instead to have the deposition within 50 miles of their residences or by telephone or video conference, 2009 U.S. Dist. LEXIS 119001, at *2, 3, 6, and the Magistrate Judge granted that Order. While District Judge Spatt agreed with the Magistrate Judge's finding that a telephonic deposition there was not feasible given the concern of viewing plaintiffs' demeanor, id. at *8 (cf. id.), Judge Spatt could not determine from that record if the Magistrate Judge considered a video conference alternative and remanded the matter for consideration of that option, id. at *8-9.

While an expensive method, a video deposition here would be cheaper than flying plaintiff, all counsel, and a court reporter (as well as possible translators) to Germany. Under Federal Rule of Civil Procedure 30(b)(3)(A), "unless the court orders otherwise, testimony may be recorded by audio, audiovisual, or stenographic means," with the noticing party (here plaintiff) bearing the costs of recording. Rule 30(b)(4) allows (by Order or upon stipulation) for

taking a deposition by telephone or other remote means, including by video conference, see Westmoreland v. CBS, Inc., 770 F.2d 1168 (D.C. Cir. 1985); Gaia v. Smith, No. C-09-212, 2010 U.S. Dist. LEXIS 28545, at *3 (S.D. Tex. Mar. 24, 2010); West v. City of New York, No. 88 Civ. 1801, 1990 U.S. Dist. LEXIS 6613, at *5-8 (S.D.N.Y. June 1, 1990). The decision to grant relief under Rule 30(b)(4) is within this Court's sound discretion, West, supra, 1990 U.S. Dist. LEXIS 6613, at *6; In re "Agent Orange" Product Liab. Litig., 28 Fed. R. Serv.2d 993, 1980 U.S. Dist. LEXIS 9874, at *12 (E.D.N.Y. 1980). As noted by Judge Pratt in the "Agent Orange" action, the use of videotape and like devices "may facilitate less expensive procedures," 1980 U.S. Dist. LEXIS 9874, at *6 (quoting Wright & Miller, Federal Practice and Procedure, Civil § 2115).

Essentially, a video deposition would allow Deja, plaintiff, and all those necessary to attend the deposition to remain in their respective places while conducting that examination, avoiding extensive travel expenses to one location. Unlike a telephonic deposition plaintiff opposes, the parties can see each other and Deja's responses and mannerism can be captured on the video recording. If a remote party wishes to go to Germany and witness Deja's testimony live may do so at their own expense.

The video deposition will be conducted under these conditions, see In re "Agent Orange", supra, 1980 U.S. Dist. LEXIS 9874, at *7-9: A conventional stenographic transcript of the deposition shall be made. The videographer shall be sworn and the videographer shall certify as to the completeness of the video recording. Prior to the examination, the parties shall stipulate to the zoom, angle, background, and other filming details. The plaintiff, as noticing party, shall file the original video recording with the Court Clerk. The videotape shall run continuously

throughout the deposition from beginning to end, videotaping shall not be discontinued during colloquy among counsel. Later editing can remove any portions that are not proper for the fact finder to see and/or hear. Plaintiff, as the party conducting the videotape deposition, shall cause to be prepared a log index, which shall include the subject matter being explored, cross-referenced to the digital reading on the digital counter of the videotape equipment, a list of exhibits, and the names of all persons and parties present at the videotape deposition, as well as pay the costs of recording and transcription. Only the parties, their counsel, translator(s), and persons necessary to conduct the deposition or to assist the parties and counsel, shall be permitted to attend the videotape deposition.

This deposition shall be conducted **within ninety (90) days of entry of this Order** upon a date and time mutually convenient to all concerned. As discussed below, the Scheduling Orders for these cases shall be adjusted accordingly.

VI.     Amended Schedule

Due to these motions, the deadlines in the Scheduling Orders ('858 Case, Docket No. 15; '984 Case, Docket No. 14) for completing discovery may not be met (see '984 Case, Docket No. 25, Pl. Atty. Aff. ¶ 15). Plaintiff's request for extension of these schedules (id.) is **granted**. The Conclusion below contains the amended Scheduling Orders for both cases.

**CONCLUSION**

For the reasons stated above, plaintiff's motions ('858 Case, Docket No. 27; see also '984 Case, Docket Nos. 21, 23) to compel defendant Deja's deposition in New York or at the expense of his insurer is **denied**. The deposition of Deja in both actions shall take place in Germany by means of a video deposition, with each party bearing its own expenses. The parties shall agree

upon a mutually convenient date and time for that deposition to be conducted within **ninety (90) days of entry of this Order**.

## AMENDED SCHEDULING ORDER

Plaintiff's motion to amend the Scheduling Orders ('858 Case, Docket No. 15; '984 Case, Docket No. 14) in these cases ('984 Case, Docket No. 25, Pl. Atty. Aff. ¶ 15) is **granted**.  The common **Amended Schedule** in these actions is amended as follows:  parties have **90 days** from the entry of this Order to depose Deja; as a result, plaintiff's expert disclosure is now due by **April 18, 2011**; defense expert disclosure by **May 24, 2011**; motions to compel by **June 1, 2011**, with all discovery to be completed thirty days later by **July 1, 2011**.  Furthermore, subsequent deadlines are also amended:  dispositive motions (formerly due June 1, 2011) are now due **October 3, 2011**; mediation to end by **October 24, 2011** (rather than July 1, 2011, as previously ordered); and the Status Conference in both cases before Chief Judge Skrenty (initially scheduled for June 16, 2011) now will be set by a separate Order for a later date.

So Ordered.

_____
        /s/ Hugh B. Scott
        Honorable Hugh B. Scott
        United States Magistrate Judge

Dated: Buffalo, New York
        December 20, 2010